UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF IOWA

IN RE:

PAUL E. DEVINE and                                    Chapter 7
ROXANA M. DEVINE

    Debtors.                                  Bankruptcy No. 05-01292M

MEMORANDUM DECISION RE:
OBJECTION TO EXEMPTIONS

    Iowa State Bank, Corwith, Iowa (hereinafter "Bank") objects to the debtors' claims of exemption in a homestead and in farm equipment. Hearing was held on July 19, 2005 in Mason City, Iowa. Robert Malloy and Nathan Malloy appeared as attorneys for Bank. David Siegrist appeared as attorney for Paul and Roxana Devine. This is a core proceeding under 28 U.S.C. § 157(b)(2)(B).

    Bank objects to Devines' claiming farming equipment as exempt. Bank contends that Devines are no longer engaged in farming. Also, Bank objects to Devines' claiming a house in Corwith as an exempt homestead. Bank says that Devines abandoned their homestead in Corwith when they moved to Marshalltown to work at off-farm jobs.

    At the time Devines filed their chapter 7 bankruptcy petition, they were residing at 2503 Reyclif Drive, Marshalltown, Iowa. They relocated to Marshalltown from Corwith, Iowa in June 2004. Prior to the relocation, the Devines and their children lived at 207 Maple Street in Corwith. Paul Devine had lived most of his life in Corwith except for when he attended college and served in the Peace Corps. Roxana Devine is originally from Central or South America. She moved to the Corwith area in 1987. The couple has school-age

children.  Devines began farming in 1987.  At that time they farmed 200 acres and helped Paul's father, Paul, Sr., farm.  By 2003, their farming operation had expanded to approximately 700-900 rented acres.  Included in the operation were the Hoffman farm, the DNR farm, 60 acres owned by Paul, Sr., and 20 acres owned by Paul's sister.  In 2003, Devines' grain sales totaled more than $100,000.00.  They also received government farm program payments of $12,000.00 to $15,000.00.  At least during some periods of farming, Paul Devine had off-farm jobs.  During 2000 he worked for Murphy Farms and Smithfield Foods.

   Roxana Devine has also worked off the farm.  For a time she was city clerk in Corwith.  Mrs. Devine's farming activity included picking up machinery-parts, working with livestock, keeping the books, transporting Paul and his father between farming locations, dealing with the Bank, and doing other farm chores and errands.  Paul made the planting and marketing decisions and also operated the farm equipment.  Roxana is a joint owner of the equipment, and is obligated on the notes to Bank and under the security agreements provided to the Bank.

   In early March 2004, Paul Devine met with Scott Whyte, Bank's senior vice president, to discuss credit for the 2004 crop year.  Whyte serviced Bank's loans for the Bank's Corwith and Westlake offices.  During their discussion, Whyte learned about grain shortages.  Whyte was concerned that Devine had sold crop and not paid all proceeds to Bank.  Bank and Devines were not able to agree to a credit arrangement to finance the farm operation for 2004.

2

Devines were not able to obtain other financing.  They had begun preparing the crop ground for the year, but were not able to continue farming.  Paul, Sr. took over the farming of the Hoffman farm, his own 60 acres and his daughter's 20 acres.  He farmed the ground in 2004 and is farming it in 2005.

For a time Paul earned money power washing hog barns.  In April 2004, he obtained a job as an international sales representative with Cemen Tech located in Indianola.  Paul speaks Spanish.  He sells for Cemen Tech in Latin America, Mexico and sometimes Africa.  He can do 60 per cent of his work over the internet and 20 per cent by telephone.  Travel is necessary 20 per cent of the time.  Paul also obtained a job teaching at Iowa Valley Community College in Marshalltown, but he has resigned that position effective the end of June.

In order to provide income, Roxana took a job with Iowa Workforce Development at its office in Marshalltown.  Through June 2004, Roxana drove back and forth from Corwith to Marshalltown two to three days per week.  She stayed part of the time with Paul's sister.  She was able to work flex time, fulfilling her weekly work obligation in four 10-hour days.  Paul stayed in Corwith with their children until the school year ended.  In June 2004, the family moved to a rented apartment in Marshalltown.  When they moved, Devines left personal property in their home in Corwith.  The property included a stove, refrigerator, pictures, chairs, mattresses and other personal items such as books, clothes, and toys.  Paul has stayed in the home on occasions when he has returned

3

to Corwith to help his father on the farm.

The Devines want to farm in 2006.  The Hoffman farm and his father's and sister's acres would be available to him.  His father would help in non-monetary ways such as lending equipment.  Roxana says she would like to return to Corwith and farm in 2006.  She says she would try to apply for a transfer to a Workforce Development office in the Corwith area.  Paul says he can keep his job with Cemen Tech and still live in Corwith.  Paul says that even if they are not able to obtain financing to operate the Hoffman farm, which is 480 acres, they would be able to afford to farm the 80 acres owned by his father and sister.

Bank says that Devines' testimony about wanting to return to Corwith and to continue farming is contradicted by discussions between Whyte and Paul.  Whyte says when he met with Paul, that Paul said he wanted to get out of farming, and he offered to give Bank a second mortgage against the home and to sell it.  Whyte says that Paul also told him he was quitting farming and would seek other employment.

Paul says he offered the second mortgage and the sale of the home only as part of a workout with Bank that would involve further financing of the farm operation.  Bank would not agree to it he says.

Devines filed their chapter 7 petition on March 28, 2005.  They claimed their house in Corwith exempt as their homestead.  They also claimed exempt under Iowa Code § 627.6(11) seven pieces of farm equipment valued at $20,000.00.  The pieces are a 12-row planter, an

4

International Harvester 25' disc, a 40' drag, an International Harvester 6 bottom plow, a Bushhog 15' disc/chisel, a John Deere 8820 combine, and a John Deere 6-row corn head.

Bank objects to the claim of exemption in the equipment on the ground that Devines are no longer engaged in farming. Bank objects to the claim of exemption in the Corwith property as a homestead, arguing that Devines abandoned the homestead when they moved to Marshalltown. In a contested matter proceeding arising out of a creditor's objection to a debtor's claim of exemptions, the burden of proof is on the objecting party to show the exemptions are not properly claimed.

## Homestead

Devines claimed the Corwith house exempt as a homestead under Iowa Code § 561.16. Bank does not dispute that Devines had lived there several years and established the property as a homestead, but Bank contends they abandoned it as a homestead when they moved to Marshalltown. An Iowa homestead, once established, is presumed to continue. In re McClain's Estate, 220 Iowa 638, 262 N.W. 666, 669 (1935). The owner may remove from the established homestead, but the homestead character of the property is still preserved, so long as the owner has an intention to return. Id. Whether a homestead has been abandoned is a question of intent to be "determined from the testimony of the parties in light of the surrounding circumstances." Charter v. Thomas, 228 Iowa 554, 292 N.W. 842, 843 (1940). I find from the evidence that Devines did not abandon the

5

homestead in Corwith. They moved to Marshalltown but at all relevant times had an intent to return to Corwith and occupy the property as their home. I conclude the property is properly claimed as a homestead and that Bank's objection should be overruled.

<u>Farm Equipment</u>

Devines claim the farm equipment exempt under Iowa Code § 627.6(11). I find that both debtors are farmers and owners of the equipment. Each item of equipment claimed exempt is reasonably related to farming operations and has been used in Devines' farming operation.

Debtors have ceased farming. However to be a farmer, for exemption purposes, a person does not have to be farming on the date of the levy. A temporary cessation of farming activity does not defeat their claim if the debtors intend to return to farming. <u>In re Indvick</u>, 118 B.R. 993, 1005 (Bankr. N.D. Iowa 1990). In determining whether a debtor is engaged in farming, the court must examine the debtor's past farming activities and the sincerity of the debtor's intent to continue farming. <u>See</u> <u>In re Indvick</u>, 118 B.R. at 1005.

I find that Devines have a sincere intent to return to farming in the future and that the intent is not unrealistic. They began farming during the beginning of the 2004 crop year, but they were unable to continue because of financial pressures. The cessation of their activities has lasted only two crop years. They have equipment, and family farmground is available to them. Paul's

6

statement to Whyte that he was going to get out of farming is not dispositive. It was stated early in 2004 during the disagreement over the crops and new financing. It is Devines' intentions at the time of filing bankruptcy that control. I conclude that the farm equipment owned by the debtors which has been claimed as exempt is exempt under Iowa Code § 627.6(11).

IT IS ORDERED that the objections by Iowa State Bank to the Devines' claims of exemption as to home in Corwith and to the farm equipment are overruled.

DATED & ENTERED: August 5, 2005

William L. Edmonds, Bankruptcy Judge

7